1

2

3

4

5

6

7

8

9

10

11

12

13

14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FRANCIS H. RUBATINO JR.,

Plaintiff,

v.

NANCY A BERRYHILL, Deputy
Commissioner of Social Security for
Operations,

Defendant.

CASE NO. 2:17-CV-01834-DWC

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

15 Plaintiff filed this action, pursuant to 42 U.S.C. § 405(g), for judicial review of Defendant's

16 denial of Plaintiff's applications for supplemental security income ("SSI") and disability insurance

17 benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local

18 Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate

19 Judge. *See* Dkt. 5.

20 After considering the record, the Court concludes the Administrative Law Judge ("ALJ")

21 erred in his assessment of medical opinion evidence from Dr. Margaret L. Cunningham, Ph.D., and

22 Dr. Holly Petaja, Ph.D. Had the ALJ properly considered these opinions, the residual functional

23 capacity ("RFC") may have included additional limitations. The ALJ's error is therefore not

24 harmless, and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g)

1 | to the Deputy Commissioner of Social Security for Operations ("Commissioner") for further

2 | proceedings consistent with this Order.

3 | <u>FACTUAL AND PROCEDURAL HISTORY</u>

4 | On March 6, 2014, Plaintiff filed an application for SSI, and on April 16, 2014, Plaintiff

5 | filed an application for DIB. *See* Dkt. 12, Administrative Record ("AR") 11. In both applications,

6 | Plaintiff alleged disability beginning June 1, 2013. AR 11. The applications were denied upon

7 | initial administrative review and on reconsideration. *See* AR 11. ALJ Larry Kennedy has held two

8 | hearings in this matter. On September 3, 2015, the ALJ held the first hearing. AR 73-81. The ALJ

9 | continued the hearing for it be held on a later date due to recently submitted evidence he had not

10 | yet reviewed. *See* AR 76-81. On January 21, 2016, the ALJ held and completed the second

11 | hearing. AR 33-72.

12 | In a decision dated July 5, 2016, the ALJ determined Plaintiff to be not disabled. AR 8-32.

13 | The Appeals Council denied Plaintiff's request for review of the ALJ's decision, making the ALJ's

14 | decision the final decision of the Commissioner. *See* AR 2-7; 20 C.F.R. § 404.981, § 416.1481.

15 | In Plaintiff's Opening Brief, Plaintiff maintains the ALJ erred by failing to provide specific

16 | and legitimate reasons, supported by substantial evidence in the record, to reject medical opinion

17 | evidence from Dr. Cunningham; Dr. Petaja; Dr. Robert Jacobson, M.D.; and Dr. David B. "Pat"

18 | Jarvis, M.D. Dkt. 14, pp. pp. 1-18. As a result of these alleged errors, Plaintiff requests an award of

19 | benefits. *Id.* at 18.

20

21

22

23

24

STANDARD OF REVIEW

2          Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of

3   social security benefits if the ALJ's findings are based on legal error or not supported by

4   substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th

5   Cir. 2005) (citing *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

6                                 DISCUSSION

7   **I.       Whether the ALJ properly considered the medical opinion evidence.**

8          Plaintiff argues the ALJ failed to provide specific, legitimate reasons, supported by

9   substantial evidence in the record, to discount medical opinion evidence from Drs. Cunningham,

10  Petaja, Jacobson, and Jarvis. Dkt. 14, pp. 1-18.

11         An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted

12  opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.

13  1995) (citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)); *Embrey v. Bowen*, 849 F.2d

14  418, 422 (9th Cir. 1988)). When a treating or examining physician's opinion is contradicted, the

15  opinion can be rejected "for specific and legitimate reasons that are supported by substantial

16  evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1043

17  (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish

18  this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

19  stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th

20  Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

21      A.   Dr. Cunningham

22         Plaintiff argues the ALJ failed to provide legally sufficient reasons to reject medical

23  opinion evidence from examining physician, Dr. Cunningham. Dkt. 14, pp. 6-9.

24

1   Dr. Cunningham performed a psychological evaluation of Plaintiff on January 14, 2014.

2   AR 525-36. As part of the evaluation, Dr. Cunningham conducted a clinical interview, mental

3   status examination, anxiety assessment, and Beck Depression Inventory-II evaluation. AR 525-36.

4   Dr. Cunningham diagnosed Plaintiff with several conditions, including major depressive disorder,

5   generalized anxiety disorder, panic disorder with agoraphobia, opioid and cocaine abuse, a history

6   of cancer, and leg and foot pain. AR 527-28.

7       In a Medical Source Statement, Dr. Cunningham opined Plaintiff was moderately limited in

8   his ability to understand, remember, and persist in tasks by following very short and simple

9   instructions. AR 528. Dr. Cunningham further found Plaintiff had marked limitations in his ability

10  to learn new tasks; perform routine tasks without special supervision; adapt to changes in a routine

11  work setting; make simple work-related decisions; and be aware of normal hazards and take

12  appropriate precautions. AR 528. Additionally, Dr. Cunningham determined Plaintiff had marked

13  limitations in his ability to ask simple questions or request assistance; set realistic goals and plan

14  independently; and perform activities within a schedule, maintain regular attendance, and be

15  punctual within customary tolerances without special supervision. AR 528. Lastly, Dr.

16  Cunningham opined Plaintiff was severely limited in four areas: his ability to understand,

17  remember, and persist in tasks by following detailed instructions; communicate and perform

18  effectively in a work setting; maintain appropriate behavior in a work setting; and complete a

19  normal work day and work week without interruptions from psychologically based symptoms. AR

20  528.

21      Regarding Dr. Cunningham's opinion, the ALJ wrote:

22      Little to no weight is given to the consultative psychological opinion from Margaret
        L. Cunningham, Ph.D., dated January 2014, that the claimant's [Global Assessment
23      of Functioning] ["]GAF["] score is 40 and **(1)** that he has "marked" to "severe"
        limitations with maintain[ing] a regular schedule, making simple work-related

24

decisions, and/or maintaining appropriate behavior in a work setting, because she relied more on the claimant's subjective symptoms. Dr. Cunningham indicated on page 1 of her report that no medical records were available. Indeed, the majority of the report contains such phrases as "Frank said" or "He said." Such reliance on the claimant's statements is problematic for the reasons stated. **(2)** That Dr. Cunningham assess[ed] the claimant with a "marked" limitation in being able to maintain a regular work schedule for example, directly conflicts with the claimant's own statements to Dr. Jarvis just 5 months later, i.e., that he rises at 4:00 AM daily, has breakfast, and attends a range of pre-schedule appointments throughout the week, etc. During the hearing held in January 2016, the claimant gave a similar recitation of daily activities . . . **(3)** As a Ph.D., Dr. Cunningham is also not qualified to assess what impact physical impairments, i.e., history of cancer and/or leg and foot pain, may have on his physical functioning.

AR 23-24 (internal citations omitted) (numbering added).

While the ALJ provided three reasons for rejecting Dr. Cunningham's opined "marked" and "severe" limitations, none of these reasons were specific and legitimate or supported by substantial evidence.[1] First, the ALJ discounted Dr. Cunningham's opinion because he found Dr. Cunningham relied on Plaintiff's subjective complaints. AR 23-24. An ALJ may reject a physician's opinion if it is primarily based upon a claimant's properly discounted self-reports. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)). However, the Ninth Circuit has held "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness." *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). This is because psychiatric evaluations "will always depend in part on the patient's self-report," as "unlike a broken arm, a mind cannot be x-rayed." *Id.* (internal quotation marks omitted) (quoting *Poulin v. Bowen*, 817 F.2d 865, 873 (D.C. Cir. 1987)). Accordingly, mental status examinations and clinical interviews "are objective measures and cannot be discounted as a 'self-report[s].'" *Id.*

---

[1] Plaintiff does not challenge the ALJ's consideration of any of the GAF scores in the record. Dkt. 14, pp. 4, 9, 10. As such, the Court does not assess the ALJ's treatment of the assigned GAF scores.

1    In this case, Dr. Cunningham's evaluation included a clinical interview, mental status

2    examination, and other psychological evaluations. *See* AR 525-36. As such, Dr. Cunningham's

3    opinion cannot be discounted as being based on Plaintiff's self-reports. *Buck*, 869 F.3d at 1049.

4    Furthermore, the ALJ failed to explain how the fact that Dr. Cunningham did not review any

5    medical reports impacted her assessment, particularly given that she conducted her own

6    examination. Thus, in all, this was not a specific, legitimate reason for rejecting Dr. Cunningham's

7    opinion.

8        Second, the ALJ discounted Dr. Cunningham's opinion that Plaintiff was markedly limited

9    in his ability to maintain a regular work schedule in light of Plaintiff's reported daily activities. AR

10   24. Generally, an ALJ may reject a physician's opinion if it is inconsistent with the claimant's

11   daily activities. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). But in any event, the

12   ALJ's decision must be supported by substantial evidence in the record. *Bayliss*, 427 F.3d at 1214

13   n.1.

14       In this case, the ALJ correctly noted that Plaintiff reported to Dr. Jarvis and testified that he

15   wakes up at 4:00 or 5:00 AM, has breakfast, and attends recovery meetings and medical

16   appointments throughout the week. *See* AR 24, 41-43, 470. But Plaintiff's ability to perform this

17   limited range of activities does not necessarily show he could "perform an eight-hour workday,

18   five days per week, or an equivalent work schedule." *See* Social Security Ruling ("SSR") 96-8p,

19   1996 WL 374184, at *1. Moreover, the ALJ failed to explain how Plaintiff's reported ability to

20   conduct these activities shows he could sustain a full-time work schedule. *See Mulanax v. Comm'r*

21   *of Soc. Sec. Admin.*, 293 Fed. Appx. 522, 523 (9th Cir. 2008) (citing SSR 96-8p) ("Generally, in

22   order to be eligible for disability benefits under the Social Security Act, the person must be unable

23   to sustain full-time work – eight hours per day, five days per week."). In addition, a disability

24

1  claimant "should not be penalized for attempting to lead normal lives in the face of their

2  limitations." *Reddick*, 157 F.3d at 722. Therefore, the ALJ's second reason for rejecting Dr.

3  Cunningham's opinion was not supported by substantial evidence because Plaintiff's reported

4  activities are not necessarily inconsistent with Dr. Cunningham's opinion.

5        Third, the ALJ discounted Dr. Cunningham's opinion because she holds a Ph.D., and thus,

6  she is "not qualified to assess what impact physical impairments, i.e., history of cancer and/or leg

7  and foot pain, may have on his physical functioning." AR 24. Dr. Cunningham is a licensed

8  psychologist who possesses a Ph.D., not a medical doctor. *See* AR 531. Accordingly, the ALJ

9  could discount opinions from Dr. Cunningham regarding Plaintiff's physical limitations. *See* 20

10  C.F.R. § 404.1527(c)(5) ("We generally give more weight to the opinion of a specialist about

11  medical issues related to his or her area of specialty than to the opinion of a source who is not a

12  specialist."). However, this reasoning is not applicable to Dr. Cunningham's conclusions regarding

13  Plaintiff's psychological conditions. *See Anderson v. Colvin*, 223 F. Supp. 3d 1108, 1121-22 (D.

14  Or. 2016) (finding the ALJ erred in discounting a licensed psychologist's opinion regarding the

15  claimant's psychological condition).

16        Although Dr. Cunningham mentioned Plaintiff had a "[h]istory of cancer" and "[l]eg and

17  foot pain," Dr. Cunningham conducted a psychological evaluation and opined to social and

18  cognitive limitations – not physical limitations. *See* AR 528. Further, the ALJ failed to explain how

19  the fact that Dr. Cunningham mentioned Plaintiff's physical impairments invalidated her findings

20  about Plaintiff's psychological conditions and associated limitations. *See* AR 24. As such, this was

21  not a specific, legitimate reason, supported by substantial evidence, for discounting Dr.

22  Cunningham's opinion.

23

24

1    For the above stated reasons, the Court concludes the ALJ failed to provide any specific,

2    legitimate reason, supported by substantial evidence, for discounting Dr. Cunningham's opinion.

3    Hence, the ALJ erred.

4    Harmless error principles apply in the Social Security context. *Molina v. Astrue*, 674 F.3d

5    1104, 1115 (9th Cir. 2012). An error is harmless only if it is not prejudicial to the claimant or

6    "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v. Comm'r of Soc.*

7    *Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina*, 674 F.3d at 1115. The

8    determination as to whether an error is harmless requires a "case-specific application of judgment"

9    by the reviewing court, based on an examination of the record made "'without regard to errors' that

10   do not affect the parties' 'substantial rights.'" *Molina*, 674 F.3d at 1118-1119 (quoting *Shinseki v.*

11   *Sanders*, 556 U.S. 396, 407 (2009) (quoting 28 U.S.C. § 2111)).

12   Here, had the ALJ properly considered Dr. Cunningham's opinion, the RFC and the

13   hypothetical questions posed to the vocational expert ("VE") may have included additional

14   limitations. For example, the RFC and hypothetical questions may have reflected Dr.

15   Cunningham's opinion that Plaintiff had marked limitations in his ability to make simple work-

16   related decisions, and perform activities within a schedule, maintain regular attendance, and be

17   punctual within customary tolerances without special supervision. Moreover, the RFC and

18   hypothetical questions may have contained Dr. Cunningham's opinion that Plaintiff was severely

19   limited in his ability to complete a normal work day and work week without interruptions from

20   psychologically based symptoms. The RFC and hypothetical questions posed to the VE did not

21   contain these limitations. *See* AR 17, 64-70. As the ultimate disability decision may have changed

22   with proper consideration of Dr. Cunningham's opinion, the ALJ's error is not harmless and

23

24

1    requires reversal. *See Molina*, 674 F.3d at 1115. The ALJ is directed to reassess Dr. Cunningham's

2    opinion on remand.

3          B.  Dr. Petaja

4          Next, Plaintiff maintains the ALJ failed to provide any specific and legitimate reason to

5    reject medical opinion evidence from examining physician, Dr. Petaja. Dkt. 14, pp. 9-12.

6          Dr. Petaja conducted a psychological/psychiatric evaluation of Plaintiff in December 2014.

7    AR 537-44. As part of her examination, Dr. Petaja conducted a clinical interview, mental status

8    examination, and Beck Depression Inventory-II evaluation. AR 537-44. Dr. Petaja diagnosed

9    Plaintiff with major depressive disorder, trichotillomania, and heroin dependence. AR 539.

10   Dr. Petaja opined Plaintiff had moderate limitations in several areas of basic work activities,

11   including his ability to understand, remember, and persist in tasks by following detailed

12   instructions; learn new tasks; perform routine tasks without special supervision; adapt to changes

13   in a routine work setting; and make simple work-related decisions. AR 539. In addition, Dr. Petaja

14   found Plaintiff moderately limited in his ability to be aware of normal hazards and take appropriate

15   precautions, ask simple questions or request assistance, and set realistic goals and plan

16   independently. AR 539. Further, Dr. Petaja determined Plaintiff had marked limitations in his

17   ability to: perform activities within a schedule, maintain regular attendance, and be punctual within

18   customary tolerances without special supervision; communicate and perform effectively in a work

19   setting; maintain appropriate behavior in a work setting; and complete a normal workday and work

20   week without interruptions from psychologically based symptoms. AR 539.

21         With respect to Dr. Petaja's opinion, the ALJ wrote:

22         Little to no weight is also given to the consultative psychological opinion from
           Holly Petaja, Ph.D., dated December 2014, for similar reasons to that discussed
23         directly above in the opinion assessment for Dr. Cunningham, i.e., (**1**) she also did
           not review any medical evidence and (**2**) instead relied on a one-time examination

24

**(3)** and what the claimant told her in rating his GAF at 52. **(4)** Similarly, Dr. Petaja indicated a marked limitation, for performing activities within a schedule. Yet, this directly conflicts with the claimant's own statements to Dr. Jarvis just 5 months later, i.e., that he rises at 4:00 AM daily, has breakfast, and attends a range of pre-schedule appointments throughout the week, etc. During the hearing held in January 2016, the claimant gave a similar recitation of daily activities. **(5)** Likewise, the remainder of the marked limitations are not supported. For example, Dr. Petaja opines the claimant has a marked limitation in communication and maintaining appropriate behavior. However, Dr. Petaja indicated on mental status examination normal rate, rhythm and volume of speech. Dr. Jarvis also noted the claimant was polite and cooperative. The claimant makes good eye contact and listens politely as well as attentively. He relates to others in a pleasant, open, friendly but serious and interested manner. The claimant is fully oriented and cooperative.

AR 24 (internal citations omitted) (numbering added).

The ALJ provided five reasons for discounting Dr. Petaja's opinion, but none of these were legally sufficient. First, the ALJ gave Dr. Petaja's opinion little weight because she did not review any medical evidence. AR 24. An ALJ cannot reject a physician's opinion in a vague or conclusory manner; rather, the ALJ "must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421. Here, the ALJ failed to explain how the fact how the fact that Dr. Petaja did not review any medical evidence impacted her assessment. *See* AR 24. But, Dr. Petaja actually conducted her own examination upon which she could base her assessment. *See* AR 537-44. Hence, this was not a specific and legitimate reason, supported by substantial evidence, to reject Dr. Petaja's opinion. *See Treichler v. Comm'r of Soc. Sec. Admin.,* 775 F.3d 1090, 1103 (9th Cir. 2014) (citation omitted) ("the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence").

Second, the ALJ discounted Dr. Petaja's opinion because she based her findings on a "one-time examination." AR 24. An examining physician, by definition, does not have a treating relationship with the claimant and usually only examines a claimant one time. *See* 20 C.F.R. §

404.1527(c) (effective Aug. 24, 2012 to Mar. 26, 2017). "When considering an examining

physician's opinion . . . it is the quality, not the quantity of the examination that is important.

Discrediting an opinion because the examining doctor only saw claimant one time would

effectively discredit most, if not all, examining doctor opinions." *Yeakey v. Colvin*, 2014 WL

3767410, at *6 (W.D. Wash. July 31, 2014). Accordingly, discrediting Dr. Petaja's opinion simply

because she saw Plaintiff once was not a specific and legitimate reason for doing so. *See id.*

The ALJ's third and fourth reasons for rejecting Dr. Petaja's opinion are the same legally

erroneous reasons the ALJ gave for discounting Dr. Cunningham's opinion – that is, that the

opinion was based on Plaintiff's self-reports, and contradicted Plaintiff's daily activities. *See* AR

24. The ALJ cited the same daily activities in discounting Dr. Petaja's opinion as he did when

discounting Dr. Cunningham's opinion. *See* AR 24. Yet as previously explained, such reasoning is

invalid, as Dr. Petaja conducted a clinical interview and mental status examination, and Plaintiff's

minimal daily activities did not contradict Dr. Petaja's opinion. As such, the ALJ's third and fourth

reasons for rejecting Dr. Petaja's opinion were error.

Lastly, the ALJ discounted Dr. Petaja's opinion regarding Plaintiff's marked limitations

because the ALJ found them unsupported by the record. Once again, however, the ALJ rejected Dr.

Petaja's opinion in a conclusory manner, as he "merely state[d] that the objective factors point[ed]

toward an adverse conclusion," but "ma[de] no effort to relate any of these objective factors" to

particular findings from Dr. Petaja. *See Embrey*, 849 F.2d at 422. "This approach is inadequate."

*Id.* The Court also notes that although the ALJ wrote that he rejected "the remainder of the marked

limitations," he did not address Dr. Petaja's opinion that Plaintiff had a marked limitation in his

ability to complete a normal workday and work week. *See* AR 24.

1    Furthermore, the ALJ's fifth reason is also unsupported by substantial evidence in the

2    record. Although the ALJ accurately described some normal findings from Dr. Petaja's

3    examination, the ALJ omitted several abnormal findings. For instance, Dr. Petaja noted Plaintiff

4    was experiencing "low mood, feelings of worthlessness, recurrent thoughts of death, social

5    withdrawal, sleep disturbance, anhedonia, change in appetite, fatigue, and difficulty

6    concentrating." AR 538. Dr. Petaja additionally wrote that Plaintiff reported hallucinations. AR

7    538. On the mental status examination, Plaintiff's mood was "dysthymic" and he had a "restricted"

8    affect. AR 540. Further, Dr. Petaja found Plaintiff outside normal limits on memory, concentration,

9    and insight and judgment in the mental status examination. AR 540-41. Thus, the ALJ's selective

10   record reliance was not a specific, legitimate reason, supported by substantial evidence, to reject

11   Dr. Petaja's findings. *See Reddick*, 157 F.3d at 722-23 (an ALJ must not "cherry-pick" certain

12   observations without considering their context).

13        The ALJ failed to provide any specific and legitimate reason, supported by substantial

14   evidence in the record, to discount Dr. Petaja's opinion. Therefore, the ALJ erred. The RFC and

15   hypothetical questions posed to the VE may have contained additional limitations with proper

16   consideration of Dr. Petaja's opinion, such as that Plaintiff was markedly limited in his ability to

17   complete a normal work day and work week without interruptions from psychologically based

18   symptoms. As the ultimate disability decision may have changed, the ALJ's error is not harmless.

19   *See Molina*, 674 F.3d at 1115. The ALJ is directed to re-evaluate Dr. Petaja's opinion on remand.

20        C.  Drs. Jacobson and Jarvis

21        Plaintiff alleges the ALJ provided legally insufficient reasons to discount medical opinions

22   from Plaintiff's treating physician Dr. Jacobson, and examining physician Dr. Jarvis. Dkt. 14, pp.

23   3-6 12-18.

24

1    The Court has determined remand is inevitable and has directed the ALJ to re-evaluate the

2    opinion evidence from Drs. Cunningham and Petaja on remand. Since reconsideration of Drs.

3    Cunningham and Petaja may impact the ALJ's assessment of Drs. Jacobson and Jarvis, the Court

4    instructs the ALJ to also re-evaluate the opinion evidence from Drs. Jacobson and Jarvis.

5        Furthermore, the Court notes the ALJ's consideration of Dr. Jacobson's opinions contains

6    facially apparent errors. For instance, in assessing Dr. Jacobson's August 19, 2015 opinion, the

7    ALJ wrote that the attached form assessment was completed by Dr. Jaymes R. Venema, M.D.,

8    rather than Dr. Jacobson. *See* AR 24-25; *see also* AR 545-554 (Dr. Jacobson's narrative statement

9    and the attached form). In addition, the ALJ's assessment also contains legal errors. For example,

10   the ALJ rejected Dr. Jacobson's November 25, 2014 opinion partly because he found it conflicted

11   with other physicians' findings. AR 25. In doing so, the ALJ erroneously gave greater weight to

12   the other physicians without explanation as to why they were more persuasive than Dr. Jacobson.

13   *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citing *Nguyen v. Chater*, 100 F.3d

14   1462, 1464 (9th Cir. 1996)) ("Where an ALJ does not . . . set forth specific, legitimate reasons for

15   crediting one medical opinion over another, he errs.").

16   **II.      Whether this case should be remanded for an award of benefits.**

17       Lastly, Plaintiff requests the Court remand this case for an award of benefits. Dkt. 14, p. 18.

18       The Court may remand a case "either for additional evidence and findings or to award

19   benefits." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Generally, when the Court

20   reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the

21   agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th

22   Cir. 2004) (citations omitted). However, the Ninth Circuit created a "test for determining when

23

24

1 | evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel*, 211

2 | F.3d 1172, 1178 (9th Cir. 2000). Specifically, benefits should be awarded where:

3 | > (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved
4 | > before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence
5 | > credited.

6 | *Smolen*, 80 F.3d at 1292.

7 | In this case, the Court has directed the ALJ to re-evaluate medical opinion evidence from

8 | Drs. Cunningham, Petaja, Jacobson, and Jarvis. *See* Section I., *supra*. Because outstanding issues

9 | remain regarding the medical opinion evidence, the RFC, and Plaintiff's ability to perform jobs

10 | existing in significant numbers in the national economy, remand for further consideration of this

11 | matter is appropriate.

12 | CONCLUSION

13 | Based on the foregoing reasons, the Court hereby finds the ALJ improperly concluded

14 | Plaintiff was not disabled. Accordingly, Defendant's decision to deny benefits is reversed and this

15 | matter is remanded for further administrative proceedings in accordance with the findings

16 | contained herein. The Clerk is directed to enter judgment for Plaintiff and close the case.

17 | Dated this 8th day of August, 2018.

18

19 | David W. Christel
United States Magistrate Judge

20

21

22

23

24